UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

R.B.S., on behalf of herself and her minor child, S.S.,

                              Plaintiffs,

-against-


NEW YORK CITY DEPARTMENT OF
EDUCATION; THE BOARD OF EDUCATION OF
THE CITY SCHOOL DISTRICT OF THE CITY OF
NEW YORK; CHANCELLOR DAVID BANKS, in
his official capacity, and THE CITY OF NEW YORK,

                              Defendants.


Civ. No. 24-3549

COMPLAINT


**PRELIMINARY STATEMENT**

1.      This complaint is being filed by R.B.S., individually and on behalf of her minor child S.S.,

(collectively, "Plaintiffs") [1] alleging that Defendants violated Plaintiffs' rights under the

Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400, *et seq*.,

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("Section 504"), the Americans with

Disabilities Act of 1990 ("ADA"), 20 U.S.C. § 12101 *et seq*., and 42 U.S.C. § 1983 ("Section

1983").  R.B.S. brings individual and systemic claims for violations of these laws.

2.      Defendants are the New York City Department of Education ("DOE"), The Board of

Education of The City School District of The City of New York; Chancellor David Banks, In His

Official Capacity, and The City of New York. Collectively, the Defendants will be collectively

referred to as the "DOE".

3.      Plaintiffs also seek review of a final administrative decision of the New York State Review

---

[1] Initials are used throughout this Complaint to preserve the confidentiality of sensitive medical, educational, and disability-related information under the IDEA and the Family Educational Rights and Privacy Act of 1974 ("FERPA"), as well as pursuant to Fed. R. Civ. P. 5.2.

Officer ("SRO") concerning relief for the conceded failure by Defendant New York City Department of Education ("DOE") to provide her child S.S. with a free appropriate public education ("FAPE") for the 2023-2024 school year ("23-24 SY").

4.      S.S. is a six-year-old girl with Noonan Syndrome, a genetic disorder that causes unique facial characteristics such as wide-set eyes and low-set ears, heart defects and developmental delays.  S.S. is classified as a student with an "Other Health Impairment."

5.      Plaintiff R.B.S. filed an administrative hearing pursuant to the IDEA concerning the 23-24 SY. The hearing was held on several dates in 2023. The DOE failed to appear at two status conferences and at the merits hearing in this case.

6.      New York State Education Law Section 4404 provides that the DOE bears the entire burden of proof – including the burden of production and persuasion – for all issues in the hearing except for the appropriateness of any private school placement for which the parent seeks tuition reimbursement.

7.      In her final decision, the impartial hearing officer ("IHO") found that the DOE denied S.S. a FAPE for the 23-24 SY and ordered some related services. However, the IHO denied R.B.S. reimbursements for tuition and vision education services and failed to rule on an appropriate program for S.S.

8.      Plaintiffs filed a partial appeal to the State Review Office ("SRO") and the DOE cross-appealed.

9.      The SRO issued a decision dated April 10, 2024 ("SRO Decision"), dismissing Plaintiffs' appeal and partially sustaining the DOE's cross-appeal.

10.      The SRO modified the IHO's decision to the extent it required the DOE to fund any related services beyond S.S.'s stay-put pendency.

11.     However, the SRO did not take any jurisdiction over Section 504 claims and did not address all of the claims raised by R.B.S.

12.     Pursuant to the IDEA, Plaintiffs hereby appeal the adverse rulings of the IHO Decision and the SRO Decision.

13.     In addition, the Defendants have imposed a number of illegal policies and practices upon S.S. and her IEPs and/or have injured her as a result of the Defendants' failure to ensure that they have IDEA-compliant policies, procedures and practices, particularly with respect to preschool students and students with who require specialized services, such as vision education services.

14.     Defendants have discriminated against S.S. based upon her disability in violation of Section 504 and the ADA.

**PARTIES**

21.     R.B.S. is the mother of S.S., a child with a disability pursuant to the IDEA and a qualified individual with a physical and mental impairment that substantially limits one or more major life activities under the meaning of Section 504 and the ADA.

22.     R.B.S., S.S., and her father and siblings live in Far Rockaway, New York.

23.     Defendant Board of Education of the City School District of the City of New York ("BOE") is located at 52 Chambers Street, New York, New York, and is a school board that is organized under and exists and has functions created by the New York Education Law. *See* N.Y. Educ. L. §§ 2950-b(1), (g).

24.     Upon information and belief, the BOE renamed itself as the "Panel for Education Policy" or "PEP."

25.     Defendant David Banks is the current Chancellor of the New York City School District ("Chancellor") and, as such, is entrusted with the specific powers and duties set forth in New York

Education Law § 2590-h.

26.      Under the New York Education Law, Defendant Chancellor functions as chief executive officer for the BOE. N.Y. Educ. L. § 2590-h.

27.      Upon information and belief, many powers previously held by the BOE devolved to the Chancellor, with the administrative operations assigned to a body denominated by the Mayor of Defendant City of New York ("Mayor") and Chancellor as the Department of Education ("DOE"). The Chancellor is selected by and serves at the pleasure of the Mayor. N.Y. Educ. L. § 2590-h.

28.      Defendant DOE is a creation of the BOE pursuant to its bylaws and is considered by Defendant City of New York ("City") to be a City agency.

29.      Defendant City is a municipal entity created and authorized under the laws of the State of New York.

30.      Upon information and belief, Defendant City exercises fiscal, administrative, and operational control over the other Defendants.

31.      Defendant City is responsible for funding special education services and implementing the relief requested pursuant to this action and in IDEA due process proceedings generally.

32.      The BOE, DOE, and Chancellor (collectively "Educational Defendants") jointly and/or individually constitute the Local Educational Agency ("LEA") under the IDEA and New York State law.

33.      The Educational Defendants are responsible for providing a FAPE to all eligible students in New York City and for promulgating policies and procedures in accordance with the IDEA and Section 504.

34.      All Defendants jointly and/or individually are recipients of federal financial assistance.

35.      When the "DOE" is referenced throughout, the term DOE refers individually to Defendant

DOE, as well as collectively to the Educational Defendants.

## JURISDICTION & VENUE

36.    This Court has jurisdiction over Plaintiffs' federal claims under the IDEA pursuant to 20 U.S.C. § 1415, 42 U.S.C. § 1988, and as an action raising a federal question under 28 U.S.C. § 1331.

37.    Venue lies in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) as it is the judicial district in which Defendants are situated and/or reside.

## LEGAL FRAMEWORK – THE IDEA

38.    The IDEA guarantees that all eligible children with disabilities, ages three through twenty-one, must be offered a FAPE.  20 U.S.C. §1412(a)(1).

39.    A FAPE must meet a student's "unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. §1400(d)(1)(A)-(B).

35.    A FAPE must (a) be free, (b) "meet the standards of the State educational agency," (c) "include an appropriate . . . secondary school education in New York," and (d) be provided in conformity with an Individualized Education Program ("IEP"). 20 U.S.C. §§1401(9), 1414(d)(2)(A); 8 N.Y.C.R.R. §200.4(e)(1)(ii).

38.    A FAPE must also be provided in the Least Restrictive Environment ("LRE"), which is deemed to be an independent requirement of the IDEA.  20 U.S.C. §1412(a)(5).

39.    To be entitled to a FAPE, a child must have one or more of thirteen disabling conditions, including autism, and, by reason of his/her disability, require "special education" and "related services." 34 C.F.R. § 300.8(a)(1).

40.    The IDEA broadly defines the categories of services that must be offered to eligible children. Those services include, but are not limited to, special education, related services,

supplementary aids and services, vocational training, transition services, assistive technology ("AT"), and positive behavioral supports and services (collectively "Special Education Services").

41.    New York State Law has created Committees on Preschool Special Education ("CPSE") and Committees on Special Education ("CSE"), which are responsible for preschool and school-age children with disabilities, respectively.  N.Y. Educ. Law § 4410; 8 N.Y.C.R.R. § 200.3(a)(1).

42.    Educational Defendants are responsible for providing a FAPE to all eligible children in New York City and for promulgating policies and procedures in accordance with the IDEA.

43.    By the beginning of each school year, Defendants must have an IEP in place that offers a FAPE to each eligible child.  20 U.S.C. § 1414(d)(2).  An IEP, which must be individually tailored to each student, serves as a blueprint for each child's special education services.  20 U.S.C. § 1414(d).

44.    Before an IEP can be developed, a child must be evaluated in accordance with detailed procedures outlined in the IDEA, Section 504, and state law.  *See e.g.* 20 U.S.C. §1414, 34 C.F.R. §§300.15, 300.303- 300.311. 8 N.Y.C.R.R. §200.4.  A child is reevaluated in accordance with the same standards at least every three years, or earlier if a parent or school district believes it is necessary.  *Id.*

45.    Among other things, an IEP must be developed by a properly constituted IEP team that includes particular members, including the parent and a district representative who is knowledgeable about the services and able to commit district resources.    20 U.S.C. § 1414(d)(1)(B).

46.    The IEP team must meet at least annually, and more frequently, if necessary, to modify a child's services and/or to address "[a] lack of expected progress toward the annual goals and in the general education curriculum."  20 U.S.C. §1414(d)(4)(A)(ii)(I).

47.     The IDEA prescribes, in detail, the process for developing IEPs and their contents.   20 U.S.C. §1414(d)(1)(A), (d)(2); 34 C.F.R. §§300.320(a)(2)-(3); 300.324; N.Y. Educ. Law §4401, *et seq.*; 8 N.Y.C.R.R. §200.4(d)(2)(iii).

48.     For example, all IEPs must contain the results of a child's most recent evaluations, as well as an accurate and consistent description of his/her strengths, present levels of academic achievement, and functional performance.   20 U.S.C.   §1414(d)(1)(A).

49.     An IEP must contain "a statement of the special education and related services and supplementary aids and services, based on peer-reviewed research to the extent practicable, to be provided to the child, or on behalf of the child, and a statement of the program modification or supports for school personnel that will be provided for the child."   20 U.S.C. § 1414(d)(1)(A)(i)(IV).

50.     Each IEP must also contain research-based instructional strategies - unless they are not feasible.   34 C.F.R.   §§300.320(a)(4),   300.324(a)(2)(i);   8   N.Y.C.R.R.   §§ 200.4(d)(2)(v)(b), 200.4(d)(3)(i).

51.     Every IEP team must consider whether a student would benefit from assistive technology ("AT").   34 C.F.R. §§ 300.5, 300.6, 300.105, 300.324(a)(2)(v).

52.     All decisions about a child's IEP and placement must be individualized and based upon the child's specific needs.

53.     Parents are entitled to independent educational evaluations ("IEEs") at public school if they disagree with a school district's evaluations, if the school district fails to conduct evaluations, or if an IHO orders IEEs as necessary to inform the hearing record.

54.     The IDEA contains a set of due process rights, which includes Prior Written Notice of decisions made by the Defendants and distribution of Procedural Safeguards. 20 U.S.C. §1415.

These notices and safeguards must be written in easily understandable language. 34 C.F.R § 300.503, 504.

55.     The IDEA also guarantees parents the right to file a due process complaint ("DPC") "with respect to any matter relating to the identification, evaluation, or educational placement of [a] child," or the provision of FAPE.  20 U.S.C. § 1415(b)(6)(A).

56.     Once a DPC is filed, a parent "shall have an opportunity for an impartial due process hearing, which shall be conducted by the [SEA] or by the [LEA] as determined by State law or by the [SEA]."  20 U.S.C. §1415(f)(1)(A).  In a two-tiered administrative system, like that of New York, "any party aggrieved by the findings and decision rendered [by the LEA] may appeal such findings and decision to the [SEA]."  20 U.S.C. §1415(g)(1).  The SEA "shall conduct an impartial review of the findings and decision appealed."  20 U.S.C. §1415(g)(2).

57.     During the pendency of IDEA due process proceedings, "unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . until all such proceedings have been completed."  20 U.S.C. § 1415(j).

58.     Defendants operate the first-tier due process hearing through the New York City Impartial Hearing Office, and are responsible for ensuring that impartial hearings comport with the IDEA's requirements.

59.     The decisions reached in due process hearings are subject to administrative appeals to the SRO, the second-tier administrative review under the IDEA.  34 C.F.R. § 300.514(b); N.Y. Educ. L. § 4404(2); 8 N.Y.C.R.R. § 200.5(k).

60.     An IHO decision, or those portions of an IHO decision, that is not appealed is final and binding, which the DOE must implement. *See* 34 C.F.R. § 300.514(a); 8 N.Y.C.C.R.

§ 200.5(j)(5)(v).

61.     Under New York law, the request for review to the SRO setting forth all of the issues on appeal is limited to a 10-page maximum, irrespective of the complexity and number of claims raised.  8 N.Y.C.R.R. § 279.8(b)-(c).

62.     In addition, parents that prevail in IDEA due process proceedings may have the school district, here the Defendants, pay their reasonable attorney's fees. 20 U.S.C. § 1415(i)(3)(B)(i)(I).

**FACTS**

94.     Additional facts are set forth in the due process complaint ("DPC") filed by Plaintiffs on September 7, 2023.  A redacted copy of the DPC is attached hereto as Exhibit A.  The allegations set forth in Exhibit A are incorporated herein by reference.

95.     S.S.'s classification under the IDEA is "Other Health Impairment."  This classification is not in dispute.

96.     As a result of her Noonan Syndrome, S.S. has significant motor, language, visual and learning challenges and thus requires a small classroom environment with significant 1:1 support and various related services.   In addition, S.S. has been diagnosed with attention-deficit hyperactivity disorder ("ADHD").  S.S. is bright and a good learner, with the appropriate supports and services.

97.     When S.S. was around one year old, she began to receive Early Intervention services of physical therapy and vision therapy ("VT").  Early Intervention is the antecedent of the CPSE for infants and toddlers up to the age of three under Part C of the IDEA.

98.     However, during the pandemic, S.S. was not successful with remote services and missed a significant amount of Early Intervention services.

**The 2020-2021 and 2021-2022 preschool school years**

99.     S.S. turned three years old, and thus came under the jurisdiction of the CPSE in November, 2020.  Due to the pandemic, in-person evaluations were not able to be completed.

100.    The DOE CPSE held an initial IEP meeting for S.S. in November, 2020.  The 2020 IEP recommended 3 hours per week of special education itinerant teacher ("SEIT"), speech-language therapy ("SLT"), physical therapy ("PT"), and occupational therapy ("OT"), despite the parent's request for additional 1:1 support/SEIT services and VT, due to illegal policies that limit the amount of SEIT services and generally deny VT to any student.

101.    The DOE and the 2020 IEP erroneously denied S.S. an extended school year/summer services.

102.    In February, 2021, S.S. began attending Gesher Early Childhood Center ("Gesher").

103.    The DOE created a new IEP for S.S. in November, 2021 but only recommended an increase to 4 hours per week of SEIT, despite the fact that S.S. was struggling in her preschool.  The DOE again denied S.S. any VT.

**2022-2023 school year**

104.    In the spring of 2022, the DOE was preparing to create S.S.'s Turning 5 ("T5") IEP, as the CSE (not the CPSE) must have an IEP in place before the start of the school year for students with disabilities who are entering kindergarten.

105.    The DOE failed to conduct comprehensive evaluations of S.S. in preparation for her T5 IEP.

106.    In May 2022, the DOE created a new IEP for S.S. for her kindergarten school year, which was supposed to be for the 2022-2023 SY.

107.    This process of developing an IEP for a child's kindergarten year is also called the "Turning Five" process ("T5") by the DOE.

108.    S.S.'s T5 IEP prepared by the DOE in 2022 for the 2022-2023 SY completely terminated her 1:1 special education itinerant teacher services ("SEIT"), and the DOE told R.B.S. that 1:1 special education teacher services is not offered to school-age students.

109.    Even though S.S. was struggling with only four hours of SEIT per week, the DOE recommended placement in a general education classroom with only 5 periods of special education teacher support services ("SETSS") per week.  The T5 IEP continued her SLT, OT, and PT mandates and added counseling (collectively, "Related Services").  The DOE again denied S.S. any VT and denied her a 12-month extended school year ("ESY") program.

110.    Because the T5 IEP was completely inappropriate for S.S., R.B.S. continued her placement in a private preschool, with small class ratios, where she could repeat her preschool year(s).

111.    R.B.S. filed her first due process complaint under the IDEA against the DOE in September, 2022, alleging a denial of FAPE for the 2020-21, 2021-22, and 2022-23 school years. The DOE designated this case IH Case No. 241733.

112.    In a decision dated July 17, 2023, the IHO found that the DOE denied S.S. a FAPE for these 3 school years ("the 2023 FOFD").

113.    R.B.S. filed a partial appeal of the 2023 FOFD to the SRO and the parties ultimately settled certain issues, but the Defendants were still required to implement aspects of the 2023 FOFD.

114.    Upon information and belief, however, the DOE has not implemented the 2023 FOFD  and has not reimbursed R.B.S. for S.S.'s tuition for the 2022-2023 school year, as ordered (and which was not appealed and not part of the settlement of the appeal).

**2023-2024 school year / IH Case No. 259045**

115.    On or about June, 2023, the DOE held a meeting and created a new IEP for S.S., recommending an Integrated Co-Teaching ("ICT") class, with the continued Related Services. Again, the DOE denied S.S. any VT and an ESY program.

116.    On or about September 7, 2023, Plaintiff R.B.S. filed a due process complaint ("DPC"), alleging a denial of FAPE for S.S. for the 2023-2024 SY.  Defendant DOE assigned the DPC a case number ("Case No.") of 259045.

117.    In a decision dated October 17, 2023, the IHO in Case No. 259045 issued an Order on Pendency ("OP"), finding that S.S.'s pendency program included 4 hours per week of SEIT plus SLT, OT, and PT, as mandated by the 2021 IEP.

118.    Upon information and belief, although S.S. received SEIT, SLT, OT, and PT pendency services during the 2023-24 school year, the provider(s) have not yet been paid.

119.    Despite its burden of proof, including production and persuasion at the impartial hearing in Case No. 259045 under New York Education Law §4404, the DOE failed to appear altogether and did not participate in any of the hearing dates in IH Case No. 259045.

120.    Moreover, the DOE did not present any documents or witnesses at the hearing on any issue, including whether a FAPE was provided to S.S.

121.    After R.B.S. concluded her case presentation, the IHO demanded that Plaintiff R.B.S. produce a copy of the 2023 IEP in dispute, or face adverse consequences for the failure to do so. Plaintiff R.B.S. requested that the hearing be reopened so that she could place her objection on the record, including that it should be admitted for limited purposes only since the DOE bore the burden of production and persuasion with respect to the question of FAPE but failed to even provide the disputed IEP as part of the hearing.

122.    Although it was DOE's burden to produce the IEP, and the DOE again failed to respond or participate in the additional proceedings, the IHO issued an order dated November 30, 2023 ("Order") stating, "I hereby demand that the Parent provides the IEP . . . . If this order is not complied with . . ., an adverse inference will be taken in this case and/or the case may be dismissed."

123.    The Order is specifically directed to R.B.S., not the parties, to produce the IEP or face adverse consequences, including the extreme sanction of dismissal, even though the IEP is a DOE-created document.

124.    The IHO made no adverse rulings against the DOE for their failure to appear and evident default in this case, and exhibited bias in favor of the DOE.

125.    The IHO issued a decision dated December 11, 2023 (the "Dec. 2023 Decision"), correctly finding that the DOE denied S.S. a FAPE for the 23-24 SY.    A redacted copy of the Dec. 2023 Decision is attached hereto as Exhibit B.

126.    The Dec. 2023 Decision, however, erroneously denied R.B.S. the requested relief for the denial of FAPE.

127.    The IHO denied R.B.S.'s request for tuition reimbursement in contravention of the evidence and the law, as the DOE did not rebut any of R.B.S.'s evidence.

128.    Further, the IHO erroneously delegated the remedy to the DOE by ordering the CSE to reconvene to consider R.B.S.'s request for VT reimbursement and additional hours of 1:1 instruction per week on a going forward basis.

129.    The IHO, however, was wrong *inter alia* in finding that (a) there was a lack of evidence to support an award of tuition reimbursement, (b) there was insufficient evidence to support R.B.S.'s

requested program, including an increase in services, and (c) a remand back to the CSE on the question *inter alia* of whether VT reimbursement and 1:1 instruction are appropriate.

130.    The IHO also failed to rule on R.B.S.'s Section 504 claims.

131.    The IHO denied Plaintiffs their due process rights.

132.    Additionally, after finding that the DOE denied S.S. a FAPE for the 2023-2024 SY, the IHO failed to delineate any educational program for S.S., creating ambiguity with respect to continuation of her services, including the stay-put program of her SEIT and related services.

133.    Further the IHO *sua sponte* and without notice to Plaintiff ruled in the Dec. 2023 Decision that the parent failed to issue a "ten day notice" although that ruling was potentially dicta.  To the extent that the IHO was going to raise an equitable bar (in the absence of the DOE's presence) she had to provide notice to R.B.S. and afford her an opportunity to respond.

134.    The IHO did find and ambiguously state that the "evidence supports the Student is entitled to the following Related Services: OT 3x30, PT 1x30, 2x30 SLT."

135.    Finally, the IHO failed to rule on issues and claims raised in R.B.S.'s due process complaint and failed to consider the extent of the violations and the DOE's conduct when denying relief.

136.    The rulings of the IHO that were adverse to Plaintiffs were, as noted above, errors of law, abuse of discretion, contrary to the record and poorly reasoned.

**Plaintiffs' Appeal to the State Review Officer / SRO # 24-026**

137.    The Plaintiffs filed a Request for Review with the SRO on or about January 22, 2024, partially appealing the Dec. 2023 Decision, which was designated SRO No. 24-026.

138.    In its Answer, the DOE cross-appealed Plaintiffs' request for VT and related services, despite having defaulted and waived all defenses and objections by its failure to participate in the hearing, as only defenses and objections raised at a hearing may be raised on appeal.  The SRO

should have refused to consider any of the DOE's cross-appeal, given the DOE's failure to attend the hearing and put forth any evidence.

139.    To the extent that the IHO made rulings favorable to the Plaintiffs that were not appealed by the DOE, including the finding that S.S. was denied a FAPE for the 2023-2024 school year, those rulings have become final and binding.

140.    The SRO issued her decision on April 10, 2024 ("SRO Decision").  A copy of the SRO Decision is annexed hereto as Exhibit C.

141.    Yet, despite the fact that the DOE failed to show up at the hearing, raised no arguments and put no evidence or testimony into the record, the SRO Decision dismissed Plaintiffs' appeal, and partially sustained the cross-appeal.

142.    The SRO erroneously found that the IHO conducted the hearing in an appropriate manner and within her discretionary bounds and denied R.B.S.'s appeal concerning the conduct of the hearing.

143.    The SRO noted that the "evidence in the hearing record provided detailed information pertaining to the student's visual deficits," citing an occupational therapy report, the SEIT's report, and S.S.'s optometrist's testimony.  Her optometrist specifically testified that she had made progress with her VT and that S.S. continued to need it due to her deficits. The SRO, however, then found a "lack of evidence regarding the vision therapy services specifically provided to the student during the 2023-2024 school year" and then erroneously concluded that R.B.S. failed to meet her burden of showing that "the vision therapy services . . . were specially designed to meet the student's unique special education needs."  The SRO was wrong on the facts and as a matter of law.

144.    The SRO erroneously held that the parents' request for reimbursement of VT must be analyzed using the *Burlington-Carter* test because they were private services.   However, even if the *Burlington-Carter* test applied, the parent met her burden.

145.    Moreover, the SRO was wrong (factually and legally) to find that R.B.S. failed to demonstrate a "financial obligation" for related services of speech-language, occupational, and physical therapy being provided under pendency and paid for by the DOE pursuant to pendency because she was not required to establish any financial responsibility in order for S.S. to be entitled to the services.

146.    That argument was not raised at the hearing or by the DOE during the hearing and should not have been raised on appeal.

147.    Moreover, the Defendants' Impartial Hearing Office Implementation Unit (IHOIU) funds private services through a pending class action lawsuit, *L.V. v. New York City Department of Education*, CITE (the "L.V. Class Action"), of which Plaintiff R.B.S. is a class member and/or third-party beneficiary.

148.    The L.V. Class Action lawsuit settlement provides that when the DOE is faced with an order that the DOE cannot implement, the DOE can offer an alternative service, which it often does, by paying for a private provider through that office.

149.    Hundreds or thousands of providers of related services and special education teacher services have been (and are paid) through the DOE's IHOIU even when the DOE is ordered to provide the services directly.

150.    Further, the SRO made an erroneous assumption that the parent would not be legally obligated to pay for the pendency services in the event the DOE does not fund the services.

151.   That issue was not raised by the DOE at the hearing and therefore should not have been raised on appeal as it was waived.

152.   The SRO also erroneously denied R.B.S.'s request for declaratory relief as to S.S.'s appropriate educational program for the 2023-2024 school year.  Without such a ruling, S.S.'s educational program for the remainder of the 2023-2024 school year is ambiguous and uncertain.

153.   The SRO suggests that R.B.S. was attempting to obtain tuition reimbursement without meeting her burden of proving Gesher is appropriate.  This is false.

154.   The educational program that R.B.S. was asserting was appropriate was the collection of services and school program – a general education school setting – in addition  to the pendency hours and additional services.

155.   There was no legal requirement for the school to testify.

156.   The SRO had upheld a similar program and argument by a parent under almost identical circumstances, and therefore the SRO's decision in this regard is arbitrary.

157.   R.B.S. was seeking a determination of what S.S.'s educational program should be for the 2023-2024 school year, which included *inter alia* a request for additional SEIT hours and VT, after there is a finding that the DOE denied the student a FAPE.  The IHO and SRO were free to find, as they (erroneously) did, that R.B.S. failed to establish Gesher was appropriate but R.B.S. was still entitled to a finding as to what does constitute an appropriate program, including how many hours of SEIT are necessary.

158.   Despite the IHO's and SRO's decisions to the contrary, R.B.S. sufficiently established S.S.'s need for additional SEIT hours and VT as part of an appropriate program for the 2023-2024 school year and was entitled to a finding that these are part of an appropriate educational program for S.S.

159.    The crux of the IDEA is to allow parents an opportunity to challenge a school district's proposed IEP and program and, if successful in that challenge, for a hearing officer to determine an appropriate program for the student.  Here, both the IHO and the SRO abdicated their responsibility under the IDEA to delineate an appropriate program for S.S., leaving her educational program for the remainder of the school year questionable.

160.    The SRO was wrong to state that R.B.S.'s request for declaratory relief "call[ed] on [the] school district[] to simultaneously become responsible to correct the shortcomings or defects of a unilateral placement with compensatory education."

161.    R.B.S. acknowledges that, at all times, she bore the burden of establishing the appropriateness of Gesher and VT, as well as the appropriateness and need for increased SEIT. R.B.S. did in fact establish the appropriateness and need for these.

162.    Where a school district fails to provide a FAPE, parents must often make a Hobson's choice when confronted with no alternative from the school district and do their best to cobble together an educational program that is "reasonably calculated to enable the child to receive educational benefits."

163.    The SRO recognized that the Second Circuit has found that a unilateral placement with additional related services may be necessary and that the Court permits an award of tuition reimbursement and compensatory education.

164.    Even though the DOE failed to participate in the IDEA proceedings and proffer any remedy for its denial of FAPE, the SRO and IHO essentially rewarded the DOE for its behavior by denying R.B.S. any relief.  While the IHO and SRO should not reflexively "rubber stamp" a parent's request for relief, R.B.S. was entitled to a remedy for the DOE's FAPE violation.

165.    Causing even more confusion about S.S.'s 2023-2024 educational program, the SRO reversed the IHO's order for S.S. to receive any related services for the remainder of the school year, even though the IHO explicitly found that R.B.S. had established that the services were appropriate.  The SRO Decision terminated S.S.'s pendency program as of the date it was issued, leaving her with no educational program (except for whatever program the parents fund).

166.    Without declaratory relief as to S.S.'s appropriate program, and in light of the IHO's and SRO's decisions, S.S.'s current educational program is ambiguous.

167.    R.B.S. had to file the instant action and appeal, so that her related services of SLT, OT, and PT, at a minimum, could continue.

168.    The SRO wrongly concluded that the parents' self-help of Gesher and related services, and in particularly VT, did not warrant relief, including reimbursement.

169.    All rulings of the SRO that were adverse to Plaintiffs are being appealed here, even if they are not specifically listed.

170.    As to all adverse rulings, the SRO Decision was an abuse of discretion, not thorough and well reasoned, erroneous as a matter of law, in conflict with or not supported by the record and not entitled to deference.

**No Deference is Due to the Decisions which Should be Partially Reversed**

171.    The Court need not afford the rulings of the IHO deference and should reverse unfavorable findings and rulings of the IHO because, *inter alia*:

a.    The IHO did not have the expertise that Courts require such that deference is warranted;

b.      The IHO failed to rule on claims that Defendants applied improper policies and practices with respect to S.S.'s evaluations, IEPs, placements, and FAPE and as well as on R.B.S.'s Section 504 claims;

c.      The IHO made rulings that conflicted with the IDEA and the Court need not defer to the administrative officers on questions of law;

d.      The IHO ignored and failed to address claims raised in DPC;

e.      The IHO ignored evidence and also ignored the failure of the Defendants to submit evidence;

f.      The IHO made findings of fact that were not based on evidence in the record;

g.      The IHO violated Plaintiffs' due process rights;

h.      The IHO failed to apply the law to the facts and misapplied the law;

j.      The IHO raised *sua sponte* defenses on the DOE's behalf after the DOE failed to participate in the hearing;

k.      The IHO made irrational and subjective decisions not based on the evidence that constituted an abuse of discretion;

l.      The IHO misconstrued the record;

m.      The IHO's decision was generally not well-reasoned;

n.      The IHO failed to conduct the hearing in accordance with the IDEA, its implementing regulations and New York State law;

o.      The IHO relegated her responsibility of determining an appropriate program back to the Defendants, giving the DOE a "second bite of the apple" after it failed to attend and participate in the administrative hearing; and

p.      The IHO shifted the burden of proof and production, particularly with respect to an equitable and compensatory remedy, onto Plaintiffs.

172.    The Court should reverse the SRO's adverse rulings and findings of fact in the SRO Decision and need not afford the SRO deference because, *inter alia*:

a.      The SRO failed to take jurisdiction over the Section 504 claims;

b.      The SRO made rulings that conflicted with the IDEA and the Court need not defer to the administrative officers on questions of law;

c.      The SRO ignored and failed to address claims raised in DPCs;

d.      The SRO ignored the evidence, ignored the failure of the Defendants to submit evidence, and ignored Defendants' failure to produce documents, essentially giving the DOE a "pass" for its failure to participate in or even attend the proceedings;

e.      The SRO made findings of fact that were not based on evidence in the record and misconstrued the record, including the IHO's post-hearing order directed to R.B.S. to produce the IEP or possibly have her case dismissed;

f.      The SRO failed to apply the law to the facts, cited inapplicable law, and misapplied the law; and

g.      The SRO decision was not well-reasoned.

**Plaintiff is Entitled to Compensatory Education for Pendency Violations**

173.    From the date that the DPC was filed and up and throughout the pendency of these proceedings, S.S. was entitled to continue in her stay-put pendency placement.

174.    Upon information and belief, Defendants have failed to implement all aspects of S.S.'s pendency, including payment for pendency services.

175.    Plaintiffs are entitled to compensatory education and additional equitable relief based on the Defendants' failure to implement pendency throughout the school year.

176.    Defendants do not have sufficient and appropriate policies and procedures to implement pendency, including timely payment to providers.

177.    Further, Defendants will not pay providers that are implementing pendency without a pendency order, even if the services comprising pendency are not contested.

**Defendants have Subjected Plaintiffs to Systemic Practices**

178.    Defendants offer a "few-sizes-fits-most" approach to special education.

179.    IEP teams are not generally allowed to offer 1:1 instruction, after-school services, and home-based special education or related services.

180.    Defendants will not recommend the services that constitute S.S.'s stay-put placement on IEPs – namely, 1:1 instruction, SEIT, and VT.

181.    Defendants do not employ staff that are available to deliver the programs and services that constitute S.S.'s stay-put placement and in particular, the SEIT and VT services.

182.    Defendants have not ensured that their menu of service options for school-age children includes 1:1 instruction and SEIT that are part of S.S.'s stay-put placement and are necessary for a FAPE.

183.    Upon information and belief, the DOE makes decisions about particular services, such as VT, that it will recommend on IEPs based on administrative and fiscal policies and practices, and not individualized determinations of a student's needs.

184.    Under Defendants' policies and practices, the following services cannot be recommended on S.S.'s IEP absent an order or settlement obtained via litigation:

        a)      1.1 instruction;

b)      1:1 SEIT;

c)      VT; and

d)      After-school special education and/or related services.

185.    Further, the CSE will not recommend any SEIT services for school-age children.

186.    R.B.S. and S.S. were subject to these policies and practices for several years.  These policies and practices violate the IDEA, Section 504, and the ADA.

187.    There is no remedy through the administrative process to address the systemic claims raised here, as IHOs do not have authority to order the Defendants to refrain from applying policies and practices.

**Defendants Do Not Have Adequate Policies and Procedures to Implement Unappealed Portions of IHO Decisions**

188.    Upon information and belief, Defendants do not have adequate policies, practices and procedures for implementation of unappealed aspects of an IHO's decision.

189.    As a result, Defendants often fail to timely implement IHO orders and there is no easy mechanism for Plaintiffs to achieve implementation of those orders, including reimbursement of the monies awarded.

<u>**CAUSES OF ACTION**</u>

FIRST CAUSE OF ACTION
SECTION 504 OF THE REHABILITATION ACT

190.    Plaintiffs repeat and re-allege the allegations of all the above paragraphs as if fully set forth herein.

191.    Defendants' conduct is knowing, intentional, reckless, and gross.

192.    S.S. is a qualified individual with a disability entitled to protection under Section 504.

193.   Defendants discriminated against S.S. under Section 504 by, *inter alia*, denying her reasonable accommodations, adopting systemic policies, procedures and practices that violate S.S.'s rights under the IDEA and New York State law, and engaging in widespread and pervasive violations of the IDEA and New York State Education law.

194.   School districts that employ blanket policies, and/or that deliver services by rules or other administrative criteria, discriminate based upon disability pursuant to Section 504, including the refusal to recommend and provide SEIT and vision education services.

195.   Defendants discriminated against S.S. under Section 504 by, *inter alia*, committing extensive, repeated, gross, knowing and reckless violations of multiple provisions of the IDEA and New York State law.  Defendants also discriminated against S.S. under Section 504 by repeatedly failing to offer S.S. a FAPE for several school years.

SECOND CAUSE OF ACTION
THE IDEA

196.   Plaintiffs repeat and re-allege the allegations of all the above paragraphs as if fully set forth herein.

197.   Defendants did not offer and provide S.S. a FAPE for the 2023-2024 school year.

198.   Plaintiff has exhausted the administrative procedures, as required by the IDEA.

199.   The IHO's and SRO's decisions denying relief to remedy the DOE's denial of FAPE should be reversed.

200.   The preponderance of the evidence in the record demonstrated that an award was necessary and appropriate to remedy the DOE's denial of FAPE, particularly as the DOE bore the burden of proof on all issues concerning FAPE.  The DOE failed to demonstrate that S.S. did not require a remedy to redress the DOE's denial of FAPE.

201.    Defendants' application of blanket policies and practices repeatedly denied S.S. a FAPE and violates the IDEA.

202.    The IHO's and SRO's decisions denying declaratory relief and reimbursement to remedy the DOE's denial of FAPE were not well reasoned, not supported by the record, legally erroneous, and should not be accorded deference.

203.    These decisions should be reversed and R.B.S. should be awarded, *inter alia*, reimbursement.

204.    Defendants have failed to implement the decision ordering reimbursement to R.B.S.

205.    Defendants repeatedly failed to comply with the IDEA's procedural requirements.

206.    Defendants engaged in systemic predetermination by refusing to individualize IEPs for S.S. and to offer services that should be available under the IDEA.

207.    Upon information and belief, Defendants have failed, and will continue to fail, to implement S.S.'s stay-put pendency.

208.    Defendants denied S.S. her due process rights under the IDEA.

209.    Plaintiffs are entitled to their reasonable attorneys' fees for work performed in connection with her administrative hearings and the instant action, to the extent they have not already been paid.

THIRD CAUSE OF ACTION
42 U.S.C. § 1983

210.    Plaintiffs repeat and re-allege the allegations of all the above paragraphs as if fully set forth herein.

211.    Defendants have violated 42 U.S.C. §1983 by depriving Plaintiffs, under color of state law, of their rights, privileges, and immunities under federal statutory and constitutional law.

212.    By implementing, promulgating, and continuing to enforce and/or effectuate policies, practices, and customs as alleged herein, Defendants have denied S.S. the educational services to which she is entitled under the IDEA and New York law, in violation of 42 U.S.C. § 1983.

213.    By failing to supervise and train their employees and agents concerning the federal and state laws and policies concerning general and special education services, Defendants have violated 42 U.S.C. § 1983.

214.    Defendants violated 42 U.S.C. §1983 by failing to ensure that pendency, unappealed portions of an IHO's decision, and SRO decisions were implemented.

215.    The Defendants violated Plaintiffs' rights under 42 U.S.C. § 1983 by failing to have adequate policies, procedures, protocols, and training to ensure that the provisions of the IDEA and Section 504 referenced herein were complied with, which deprived S.S. of her right to a free and appropriate education under federal and state law.

216.    Under color of state law, the Defendants deprived S.S. of her right to educational services afforded to her under New York State law, in violation of the Fourteenth Amendment of the U.S. Constitution.

217.    As a direct and proximate result of the Defendants' misconduct, S.S. has suffered and will continue to suffer harm, unless Defendants are enjoined from their unlawful conduct.

FOURTH CAUSE OF ACTION<br>THE ADA

218.    Plaintiffs repeat and re-allege the allegations of all the above paragraphs as if fully set forth herein.

219.    The ADA, like Section 504, prohibits discrimination based on disability.

220.    S.S. is a qualified individual with a disability entitled to protection under the ADA.

221.    Defendants discriminated against S.S. because of her disability by, *inter alia*, denying her reasonable accommodations, adopting systemic policies, procedures and practices that violate S.S.'s rights under the IDEA and New York State law, including the failure to offer, recommend, and provide SEIT and VT, and engaging in widespread and pervasive violations of the IDEA and New York State Education law.

222.    Defendants discriminated against S.S. by, *inter alia*, committing extensive, repeated, gross, knowing and reckless violations of multiple provisions of the IDEA and New York State law. Defendants also discriminated against S.S. by failing to implement pendency and final orders and repeatedly failing to offer and provide S.S. a FAPE for several school years.

223.    Defendants' actions (and inactions) discriminated against S.S. on the basis of her disability when they failed to make individualized determinations of her needs and recommendations.

224.    As a result of Defendants' actions, S.S. has suffered, and will continue to suffer, harm.

<b>RELIEF</b>

Wherefore, Plaintiffs request that the Court:

i.   Issue a Declaratory Judgment in Plaintiffs' favor finding that Defendants violated Plaintiffs' rights as alleged herein under the IDEA, Section 504, the ADA, and Section 1983.

ii.  If necessary, issue a preliminary injunction implementing S.S.'s stay-put pendency.

iii. Issue a final Order and Judgment in Plaintiffs' favor that includes:

    a.   Equitable relief and compensatory education for the Defendants' violations of the IDEA and Section 504;

    b.   Reimbursement for Plaintiffs' expenses to remedy the DOE's denial of FAPE, including interest for the DOE's delay;

     c.      The provision of (or, if DOE is unable to provide the services but R.B.S. has a provider, funding and/or payment for) S.S.'s pendency services;

     d.      Declaratory and injunctive relief as necessary to vindicate and enforce Plaintiffs' rights; and

     e.      Awarding Plaintiffs costs and attorneys' fees for this action and the underlying administrative hearings, to the extent not already paid; and

iv.  Order such other and further relief as the Court may deem just and appropriate.

Dated:     May 8, 2024
          New York, New York

          Respectfully submitted,
          THE LAW OFFICE OF ELISA HYMAN, P.C.

               */s Erin O'Connor*
          By_____
          Erin O'Connor, Esq., Of Counsel
          Attorneys for the Plaintiffs
          1115 Broadway, 12th Floor
          New York, NY 10010
          646-572-9075
          eoconnor@specialedlawyer.com

28