# THE LAW OFFICE OF
# ELISA HYMAN, P.C.

September 7, 2023

*Via Email: IHOQuest@schools.nyc.gov*
Impartial Hearing Office
New York City Department of Education
131 Livingston Street- Room 201
Brooklyn, NY 11201

*Via Email: specedih@mail.nysed.gov*
New York State Education Department
Impartial Hearing Unit
89 Washington Avenue, Room EB307M
Albany, NY 12234
Attn: Impartial Hearing Reporting System

## DUE PROCESS COMPLAINT

| | |
|---|---|
| Student: | S███████ S██████ |
| Parent(s): | R███ B████ &C███████ S██████ |
| Date of Birth: | 11/12/2017 |
| NYC ID #: | ████████ |
| Address: | ██████████████████, Far Rockaway, NY 11691 |
| Current School: | Gesher |
| Home District: | 27 |

1. On behalf of the Parent(s), I am filing this impartial hearing with the New York City Department of Education ("DOE") pursuant to the Individuals with Disabilities Education Improvement Act ("IDEA") and its implementing regulations, Section 504 of the Rehabilitation Act of 1973 ("Section 504") and its implementing regulations, and Article 89 of the New York Education Law and its implementing regulations and guidelines.

2. All the allegations stated herein are made upon information and belief.

## OVERVIEW OF THE PROBLEM

3. For the 2023-2024 School Years ("SYs at Issue"), the DOE failed to provide a free appropriate public education ("FAPE") to the Student.

4. Upon information and belief, during the SYs at Issue, the DOE failed to conduct timely and appropriate evaluations and reevaluations.

5. Upon information and belief, during the SYs at Issue, the DOE failed to create substantively and procedurally appropriate IEP(s) and placement(s).

1115 BROADWAY, 12TH FL.                                    42 WEST 24th STREET, 2ND FLOOR
NEW YORK, NY 10010                                                        NEW YORK, NY 10010

WWW.SPECIALEDLAWYER.COM

K. Wharwood, Case Coordinator IHO# 239045

6. Upon information and belief, during the SYs at Issue, the DOE follow the procedural requirements of the IDEA.

7. The DOE failed to provide the Parent(s) with their due process rights, including Prior Written Notice ("PWN"), legally sufficient Procedural Safeguards, and the New York State Parent Handbook. The failure to provide due process rights has denied the Parent(s) meaningful access to the special education process and resulted in a denial of FAPE.

8. Due to the DOE's failure to provide the Parent(s) with special education records and to explain the special education process to the parent in an adequate fashion, this complaint may need to be amended once the DOE provides the Student's special education file. The failure to provide access to special education records has effectively denied the Parent(s) meaningful access to the process and resulted in a denial of FAPE.

9. The DOE predetermined the outcome of meetings, based on availability of resources, and blanket policies and practices, which denied the Student a FAPE.

10. Further, the DOE violated Section 504 and discriminated against the Student based on the conduct described herein, including committing multiple IDEA violations, denying reasonable accommodations, and adopting and implementing systemic and blanket policies regarding special education service delivery that have affected the services offered to the Student.

## FACTUAL OVERVIEW

11. The Student has been diagnosed with Noonan's syndrome; a genetic disorder that involves unusual facial characteristics, short stature, heart defects and developmental delays. .

12. The Student has difficulty following directions and transitioning from preferred activities to less preferred activities.

13. The Student needs assistance and reminders to produce clear verbal responses to questions and has difficulty initiating and maintaining conversations with peers and teachers as well as engaging in appropriate play skills with peers.

14. The Student engages in avoidance behaviors when tasks increase with difficulty and also requires support for activities of daily living. Student can speak in somewhat coherent, albeit very poorly articulated sentences. However, at times, non-meaningful gibberish is mixed in.

15. His pragmatic skills are extremely delayed, and he has significant challenged engaging in appropriate reciprocal communication and appears tuned out and unfocused during exchanges.

16. The Student exhibits significant delays in consistent use of her dominant hand and requires sensory input to improve focus and attention; she has difficulty filtering out auditory and visual stimuli and gets easily distracted by peers.

## EDUCATIONAL SERVICES HISTORY

17. When Student was around 10 months old, the Student began to receive services with the New York City Early Intervention ("EI") program, beginning with physical therapy ("PT"). Vision Therapy ("VT") was added to Student's EI program after asked for vision therapy evaluation. However, due to COVID, the Student was unable to engage in remote instruction and thus missed services during EI.

18. Challenge Early Intervention referred the Student to the CPSE for the provision of services upon aging out of EI.

19. Parent provided consent for evaluation sin May 2020.

20. As part of the transition to the CPSE, the DOE conducted initial evaluations some time prior to the Student's third birthday.

21. These initial evaluations were done remotely via Zoom, despite the Parent's request that they be done in person.

22. The Parent was told that in person evaluations could not be done for several more months, due to the Covid-19 pandemic, despite the Student's struggle to engage remotely.

*The 2020-2021 School Year*

23. Student did not receive any services in July and August of 2020.

24. Parent continuously called the DOE requesting a review of the evaluations conducted and the need for an IEP meeting.

25. The DOE finally held an initial IEP meeting in 2020 and issued an IEP (the "2020 IEP"). The IEP classified the student as a preschool student with a disability. In addition, the 2020 IEP recommended that the Student receive the following services on a *10-month basis:*

    a. SEIT for approximately 3 hours per week; and
    b. 1:1 Speech and Language Therapy ("SLT") 2x30
    c. 1:1 Occupational Therapy ("OT") 2x30
    d. 1:1 Physical Therapy ("PT") 2x30

26. Parent advised of the student's continued need for VT as it was a service she received during EI. The CPSE advised they could not add VT to the Student's IEP as they required an ophthalmologist's note for the school year.

3

27. Parent provided the required prescription note recommending the provision of VT to the DOE; the DOE never responded and never added VT to Student's IEP.

28. During the 2020-2021 school year, the Student was enrolled in a 3K program at All My Stars, which ran from 9 a.m. to 3:30 p.m. The Parents paid approximately $850 per month for the Student to attend this program.

29. At All My Stars, the Student received SEIT services from Starting Point Agency, SLT and OT from All Children's Therapy and PT from a private physical therapist.

30. In February 2021, the student was placed in a 3K classroom at Gesher Early Childhood Center with thirteen children, one lead teacher, one co-teacher and two assistant teachers.

31. The Student could not receive all of the IEP-mandated SEIT, SLT,OT and PT services at the 3K program, due to COVID-19.

*The 2021-2022 School Year*

32. In November 2021, the DOE held an "IEP meeting" which included the Parents and the CPSE administrator. After this meeting, the DOE issued an IEP (the "2021 IEP"), which continued to classify the Student as a preschool student with a disability. In addition, the 2021 IEP recommended that the Student receive the following services on a 12-month basis:

    a. SEIT services of 4 hours per week;
    b. OT 3x30 (1:1) per week.
    c. SLT 2x30 (1:1) per week
    d. PT 2x30 (1:1) per week

33. Although the SEIT mandate was increased to 4 hours per week and the OT mandated was increased to 3x30 (1:1) per week, the Student continued to struggle.

34. The Parent, SEIT and OT therapist asked for the provision of services during the summer months sue to the Student's regression earlier in the school year.

35. Both the Parent and the UPK school staff agreed it made sense for the Student to be further evaluated as they were all concerned that the Student's deficits were not being fully addressed by the services recommended in the November 2021 IEP.

36. During the 2021-2022 school year, the DOE did not fully implement the Student's IEP, as the mandates were implemented inconsistently, resulting in significant gaps in the Student's receiving her full mandates.

*The 2022-2023 School Year*

37. In the Spring of 2022, the DOE's CSE simultaneously started the process for the Student's Turning Five ("T5"), where the DOE transitioned the Student's special education program and planning from the DOE's CPSE to the CSE.

38. The DOE advised the Parents that the DOE was going to conduct a reevaluation but as per policy, the only assessments that can be done by the T5 team are a classroom observation, a social history and a psychological update.

39. The DOE only conducted an observation and social history, and never consulted with the IEP team and the parent before making this decision about conducting the limited assessments.

40. The observation noted the teacher's comments that the student is extremely self-directed and requires a lot of 1:1 support in the classroom. The observation confirmed that she needed constant directing, prompting and focusing to follow the activities in the classroom and transition from activity to another. The observation notes she needs verbal prompts and 1:1 support. The teacher feedback noted low to nonexistent skills in peer interaction, motor skills and communication.

41. The parents asked for an IEP and public school placement for the 2022-2023 school year.

42. The DOE held a T5 meeting the DOE held in May 2022. The SEIT, the Student's teacher and the DOE representative attended.

43. The DOE said the Student could no longer have SEIT services because she was turning 5 and it is just not a service that they offer. The DOE said the best they could do is give SETSS combined with counseling to "fill in" the areas that SETSS cannot do.

44. The DOE only recommended five hours of SETSS, which the Parents thought would not be appropriate, since it would not address the Student's significant communications, social, emotionally and behavioral delays.

45. At the IEP meeting, the DOE representative advised that the DOE does not offer push-in 1:1 teacher services for school-age students and would not increase SLT or OT, despite the fact that the Student did not have these services for an extended period of time.

46. Even though the IEP team will claim that the team did not pick a "placement" at the time of the meeting, the IEP team's statements in that regard will be disingenuous because the IEP did not include transportation. Given the child's age, behaviors, social skills and disability, the student would require transportation to and from school as a related service, which the DOE did not recommend.

47. Further, the DOE was not permitted to recommend after-school services, which means the Student will have to be pulled out of class time to receive their IEP mandate.

48. The DOE never gave the Parents information about a paraprofessional. In fact, that service could not have been considered by the teams because (a) there was no FBA; and (b) the DOE

5

limits recommendations for paraprofessionals to children who elope, have aggressive behaviors, health needs and/or language. Even though the Student needs 1:1 support, the DOE does not have any service that would be available.

49. Further, the Student is not socially, emotionally and/or behaviorally ready for kindergarten. She needs another year of preschool services and curriculum for her developmental level. However, the DOE policy would prevent any student with a disability – regardless of individual need – from repeating preschool or extended preschool services if they turn five years old before the end of the 2022 calendar year.

50. The DOE sent a school location letter to the local zoned school.

51. However, upon information and belief, a public school placement was inappropriate for the Student, the school and class were too large, and no school would be able to implement the 2022 IEP as written.

52. The DOE did not offer S█████ a legally appropriate IEP and placement for the 2022-2023 school year.

53. As a result of the Department's failure to provide S█████ with a Free Appropriate Public Education for the 2022-2023 school year; the Parent filed a Due Process Complaint (IH#241733).

54. On or about July 17, 2023 a Findings of Fact & Decision was received in IH# 241733; and is currently being appealed.

***The 2023-2024 School Year***

55. S█████ continues to require 1:1 SEIT services for pre-teaching, redirection and prompting to access the curricula in the classroom; she requires work on sensory and behavior regulation, safety and appropriate community participation, socialization, communication learned during her school program.

56. The CSE held an IEP meeting on or about June 26, 2023 whereby the following was recommended:
    a. Integrated Co-Teaching Services (Math, ELA, Social Studies and Science) 5 times per week each period;
    b. 10 Month School Year
    c. 1:1 Counseling 1x30
    d. 1:1 Occupational Therapy 3x30
    e. 1:1 Physical Therapy 1x30
    f. 1:1 Speech and Language Therapy 2x30

57. The Parent advised the CSE team that the recommended program failed to include the necessary 1:1 SEIT support during the school day, vision therapy, occupational therapy, speech and language therapy and physical Therapy S█████ requires to make progress towards her goals.

58. Parent reached out via email to the CSE team upon receipt of the finalized IEP to inquire

K. Wharwood, Case Coordinator IHO# 259045

specifically as to S_____ being pulled out of class for occupational therapy 3x weekly, the lack of sufficient physical therapy OT, along with inappropriate goals for speech and language therapy and other domains of measurement.

59. Parent never received a response to her communications despite several overtures made during the course of the summer.

60. The DOE's evaluations, IEP meetings, resulting IEPs, procedures, programs, and placements were substantively and procedurally flawed, did not comport with the standards of the IDEA or state law, resulted in a significant deprivation of educational benefit, and denied S_____ a FAPE. In addition to those mentioned above, the deficiencies and violations include, but are not limited to, the following:

    a.  The IEP failed to contain appropriate 1:1 instruction;
    b.  The DOE failed conduct adequate reevaluations before making a change in placement;
    c.  The DOE failed to base the IEP recommendations on adequate reevaluations and data and ignored the input of teachers and reports in the record;
    d.  The DOE failed to address the Student's delays, as evidenced by the evaluations, and other reports provided, an input from the Parent and other providers/teachers;
    e.  The IEP(s) failed to include sufficient special education, related services, supplementary aides and services, modifications and supports, to adequately address the Student's delays in the areas of communication, visual, fine, and gross motor skills, academics, behavior, executive functioning, sensory, activities of daily living, functional skills, cognition, and socialization;
    f.  The IEP(s) did not offer sufficient related services as defined by 34 C.F.R. 300.34.
    g.  The IEP team(s) failed to consider and recommend Assistive Technology ("AT") and AT training for the Student or adequate AT and AT training;
    h.  The IEP(s) did not offer "specially designed instruction";
    i.  The IEP(s) did not contain peer-reviewed, research-based methods, although such methods were feasible;

j.  The IEP(s) did not include a sufficient description of the Student and the Student's present levels of performance, strengths, and weaknesses across numerous domains, settings, and people;

k.  The IEP(s) failed to adequately describe the Student's strengths, weaknesses, and the ways the Student's disabilities impact the Student's ability to make progress in the general education curriculum as measured by the New York State Standards;

l.  The items listed in the "management needs" section of the IEP are inadequate for a variety of reasons. First, , the items listed in management needs should be listed on the recommended programs and services section of the IEP, with information about duration, frequency, and ratio. Further, there are insufficient staff services on the IEP itself to implement all of those management needs on a consistent basis throughout the day, as there are not enough staff, the management needs and their implementation are - based on DOE policy and practice - left up to the discretion of the teachers, and thus cannot be enforced by the parents in any specific fashion;

m.  The goals of the IEP(s) failed to adequately address the Student' needs in all areas contained in the evaluations, reports and input of the Parent(s), teachers and providers, including, but not limited to cognition, academics, communication, social skills, behavior, focusing, fine motor skills, and functional/ADL skills;

n.  The DOE failed to align the goals with the New York State Learning Standards or consider the standards in development of the goals and services;

o.  The goals of the IEP(s) were vague, not measurable, did not contain adequate benchmarks and were not individually tailored to meet the Student's individual needs;

p.  The IEP team(s) were not properly constituted; upon information and belief, the team did not contain required members and, if those individuals were present in name/title, they did not possess the required knowledge, training, or independence to properly formulate a legal IEP;

q.  The IEP team(s) wrote the IEP(s) without adequate input from the Parent(s), and the Parent(s) were deprived of the ability to meaningfully participate in the IEP development process;

r.  The IEP team applied illegal blanket policies to the evaluation, IEP, and placement process;

s.  The team had limited options available in terms of services and ratios;

t.  The DOE was not allowed to recommend a specific methodology;

u.  The IEP team predetermined the program and placement recommendation;

v.  The DOE representative who handled the IEP meeting made unilateral decisions; and

w.  The DOE failed to ensure that the Parents understood the IEP process.

x.  The IEPs failed to address the Student's Autism;

y.  The IEP team(s) predetermined the program and placement recommendations and were unable to consider 1:1 instruction, ABA therapy and/or home-based services;

z.  The IEP(s) did not include positive behavioral interventions and support services even though the Student's behavior significantly interfered with the Student's ability to make progress; and

aa.  The DOE did not conduct an FBA or formulate a sufficient or appropriate BIP;

bb. The DOE failed to prescribe the group size of the Student's ICT and class;

cc. The DOE failed to recommend a small class and/or a small inclusion class;

dd. The ICT recommended does not offer appropriate academic and social support for the Student;

ee. The DOE recommended that the Student's program include general education classes without support, which is not appropriate;

ff. The DOE failed to recommend a small school setting;

gg. The DOE failed to recommend appropriate transportation and never assessed the Student for his transportation needs;   and

ii. The DOE failed to consider and recommend ESY summer services even though the Student experiences severe regression during breaks in instruction and otherwise requires summer services for a FAPE;

61. The DOE failed to develop an IEP tailored to S███████'s individual and unique needs, and instead adhered to DOE policy, custom and/or practices, which resulted in an insufficient and inappropriate IEP for S███████.

62. The DOE also failed to offer an appropriate placement to S███████.

63. These due process violations constitute more than a *de minimis* violation of S███████'s and her parent(s)' rights and should be weighed against the DOE when considering the equities of the claim.

64. Overall, the DOE failed to appropriately evaluate S███████, provide her with an appropriate placement, and failed to produce a procedurally and substantively adequate IEP for her for the 2023-2024 school year.

65. S███████ is a qualified individual with a disability and the DOE accepts federal funding as part of the special education programs it has proposed for him.

66. The DOE has denied S███████ a FAPE as it has been defined by the Section 504 regulations.

67. The DOE has discriminated against S███████ based upon her disabilities and violated her rights under Section 504 by failing to ensure that she has equal access to education as compared to students without disabilities in New York.

68. The DOE's leadership is or should be aware that its programs are not comparable to the services offered to general education students, that IEP teams make decisions based upon blanket policies and the availability of resources, and that the DOE is significantly out of compliance with almost every provision of the IDEA and Section 504. Yet, the DOE fails to change the manner in which it delivers special education services, fails to supervise and monitor its staff, or implement effective policies, procedures, and programs.  These policies have directly impacted S███████ and the development of her IEPs and have contributed – in a significant manner – to the DOE's denial of a FAPE for her.

69. The DOE violated S███████'s rights under the New York State Constitution and United States Constitution with respect to the denial of, limitation on, and exclusion with respect to

K. Wharwood, Case Coordinator IHO# 259045

S████'s state-mandated rights to general and special education based upon her disability and violated his right to education without due process of law.

70. The DOE maintains a policy and practice whereby it refuses to answer parents' due process complaints in accordance with the IDEA, and instead files generic, boilerplate form responses that do not put the parents on sufficient notice of the DOE's position(s). This practice interferes with parents' due process rights.

71. Individuals responsible for resolution sessions at the DOE do not possess the authority to resolve the type of claims raised here.

72. As S████ has not been appropriately and thoroughly evaluated and has not received appropriate services, it is not possible to identify every potential remedy that may be warranted to place S████ in the position she would be in, had she not been subjected to the deprivations described herein.

73. The manner in which the due process system is administered violates the IDEA, as the impartial hearing officers have an inherent conflict of interest, and the DOE (a party to the action) fully controls the administrative aspects of the process.

74. The DOE and its employees and agents have violated 42 U.S.C. §1983 by acting under color of state law and causing a deprivation of S████'s right to education via inappropriate policies, customs, and a failure to supervise and monitor its staff.

75. The DOE has implemented policies and procedures pursuant to which they have changed the impartial hearing system and eliminated the system of independent impartial hearing officers who are experienced and free from a conflict of interest. The DOE has replaced that system with hearing officers who are employees of New York City. Due to the role of and relationships between the City, the DOE, the Chancellor, the Board of Education, the Mayor of New York  and OATH, hearing officers who are also City employees have an  inherent conflict of interest which prevents them from affording the parent a due process hearing consistent with the IDEA and Section 4404 of the New York State Education Law.

76. Further, upon information and belief, the City has hired hearing officers who do not have sufficient experience and/or expertise in special education.

77. If this complaint is assigned to a hearing officer who is an employee of New York City as a hearing officer or who is a hearing officer who does not have any prior experience in special education, it is the parent's view that the due process system is non-compliant with the IDEA and inherently non-impartial.

## PENDENCY

78. The DOE has an illegal policy whereby it refuses to implement payments for last agreed-upon/pendency placements and services after a hearing is filed without an order from an impartial hearing officer, even where there is no legitimate and/or substantive dispute about the nature of the pendency placement and services.

79. As a result of DOE's illegal policies on pendency, parent(s) are required to retain counsel and incur legal fees.

80. S_____' pendency should be:

      i. 12-month basis
     ii. SEIT services of 4 hours per week;
    iii. OT 3x30 (1:1) per week.
    iv. SLT 2x30 (1:1) per week
     v. PT 2x30 (1:1) per week

81. To the extent that the DOE fails to timely implement the Student's transportation, the parent(s) intend(s) to utilize taxi, car service and/or rideshare services to transport the Student to/from school and/or approved services, provided that this transportation service is feasible and, if necessary, there is a companion to accompany the Student. The Parent will be seeking direct payment from the DOE, satisfaction of the Parent's debt and/or reimbursement for alternative transportation service, including rideshare voucher funding, rideshare/taxi and/or car service or mileage, as well as for any necessary companion, until such time as the DOE timely and appropriately implements the Student's transportation. This may include four rides per day.

**PROPOSED RESOLUTION**

82. Findings of fact in favor of the Parent and Student with respect to the facts alleged herein.

83. A holding that the DOE has violated S_____' and the Parent's rights under the IDEA, Section 504, New York State Law and Section 1983 as alleged herein.

84. A finding that the DOE failed to provide S_____ with a FAPE for the 2023-2024 school year;

85. A **FINAL ORDER** that includes:

    a. Full day Provision of 1:1 Special Education Itinerant Teacher Services
    b. 10-month school year[2]
    c. Prospective payment, direct payment and or parental reimbursement of tuition paid to Gesher for the 2023-2024 school year
    d. Individual speech language therapy 2x30 1:1 weekly
    e. Individual physical therapy 2x30 weekly
    f. Individual occupational therapy 3x30 weekly
    g. The DOE shall reimburse the Parents for any related out-of-pocket expenses incurred during the 2023-2024 school year within fifteen (15) days of submission of proof of payment.

86. The IHO should order the DOE to prospectively pay, satisfy the Parent's debt by direct payment to the vendor of such services and/or reimburse the Parent for any transportation expenses that the Parent incurs (including but not limited to public transportation, rideshare voucher funding, rideshare/taxi and/or car service or mileage funding for Student and a travel companion and return rides for any travel companion) *until such time as the DOE has adequately implemented the Student's transportation.*

87. Compensatory services to make up for the lack of FAPE in the 2023-2024 school year, and for any time periods during the duration of the administrative proceedings during which S_____ does not receive services he is entitled to by law, including any failure of the DOE to provide pendency or comply with interim orders;

88.  As transportation is necessary to facilitate travel to and from evaluations and/or compensatory education, the parent(s) require taxi, car service and/or rideshare services to transport the Student and, if necessary, a companion to accompany the Student. The Parent will be seeking direct payment from the DOE, satisfaction of the Parent's debt and/or reimbursement for alternative transportation service, including rideshare voucher funding,, rideshare/taxi and/or car service or mileage, as well as for any necessary companion, until such time as the DOE timely and appropriately implements the Student's transportation. This may include four rides per day.

89.  If the Parents incur any other debts or extend any funds with respect to S███████'s education for the 2023-2024 school year, such as evaluations, transportation or compensatory education, their debts should be satisfied, or they should be reimbursed.

90.  Any additional relief that is appropriate as of the time the impartial hearing officer is ready to issue a final order, but which was not known to the Parent at the time this hearing was filed: e.g., the independent evaluations may recommend greater service mandates or different services than what is currently requested.

91.  Attorneys' fees and costs.

The DOE should not assume that, since the parents are providing this notice, they are unwilling to consider changing their mind if the DOE offers an appropriate IEP and placement. However, until further notice, their decision stands.

If you have any questions or require more information, please feel free to contact the undersigned via email at arashid@specialedlawyer.com.

Respectfully Submitted,

By: _____
Ayodele S. O. Rashid, Esq.
Of Counsel
The Law Office of Elisa Hyman, P.C.

K. Wharwood, Case Coordinator IHO# 2030a3

K. Wharwood, Case Coordinator IHO# 259045

**Tanner Ashley**

| | |
|---|---|
| **From:** | Ayodele Rashid <arashid@specialedlawyer.com> |
| **Sent:** | Thursday, September 7, 2023 4:58 PM |
| **To:** | Impartial Hearing Office; specedih@mail.nysed.gov |
| **Subject:** | S███ S█ NYCID#238-082-044 |
| **Attachments:** | S███ S█ DPC.pdf |

Attached please find a Due Process Complaint for the above referenced student.

Best,
**Ayodele Rashid, Esq.**
Of Counsel
she/her/hers

**The Law Office of Elisa Hyman, P.C**
1115 Broadway, 12th Floor
New York, NY 10010
Office Phone: 212-293-8686
Office Fax: 212-293-8685
Direct: 646-572-9074
Email: arashid@specialedlawyer.com

*Confidentiality Notice: This e-mail communication and any attachments may contain confidential and privileged information for the use of the designated recipients named above. If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please notify this office immediately by replying to this message and deleting it from your computer.*

Confidentiality Notice: This e-mail communication and any attachments may contain confidential and privileged information for the use of the designated recipients named above. If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please notify this office immediately by replying to this message and deleting it from your computer. Thank you.