# FINDINGS OF FACT AND DECISION

| | |
|---|---|
| Case Number: | 259045 |
| Student's Name: | Student |
| School District: | N.Y.C. Dept. of Ed., District # 27 |
| Impartial Hearing Officer: | Kia Moore |
| Date of Filing: | September 7, 2023 |
| Hearing Requested by: | Parent |
| Date of Hearing: | November 2, 2023 |
| Record Close Date: | December 11, 2023 |
| Date of Decision: | December 11, 2023 |

## BACKGROUND

The Parent, through counsel, filed a Due Process Complaint ("DPC") on or about September 7, 2023. In the request, the Parent alleges that the Department of Education ("DOE" or "District") failed to offer the Student a free appropriate public education ("FAPE") for the 2023-2024 school year.[1]

The Student has been classified by the District as Other Health Impairment.[2] The Student has been diagnosed with Noonan's syndrome which is a genetic condition that involves unusual facial characteristics, short stature, heart defects and developmental delays.[3] [The Student] needs assistance and reminders to produce clear verbal responses to questions and has difficulty initiating and maintaining conversations with peers and teachers as well as engaging in appropriate play skills with peers. The Student engages in avoidance behaviors when tasks increase with difficulty and also requires support for activities of daily living. The Student can speak in somewhat coherent, albeit very poorly articulated sentences.[4] The Student exhibits significant delays in consistent use of [their] dominant hand and requires sensory input to improve focus and attention; [the Student] has difficulty filtering out auditory and visual stimuli and gets easily distracted by peers.[5]

In the IEP from June 26, 2023, the District recommended a ten-month school year in which the Student would receive Integrated Co-Teaching Services in Math, ELA, Social Studies and Science for 5 periods per week, Counseling Service 1x30 per week, Occupational Therapy 3 x30 per week, Physical Therapy 1x30 per week and Speech Language Therapy 2x 30 per week. All services to be provided in the English language.[6] The Parent advised the CSE team that the recommended program failed to include the necessary 1:1 SEIT support during the school day, vision therapy, occupational therapy, speech and language and physical therapy the Student requires to make progress towards their goals.[7] The Parent stated that the District's recommendation of an ICT class is not appropriate for the Student's needs- it is too large of a setting to provide the Student with the 1:1 support they need.[8]

---

[1] *See* Parent's Exhibit A.
[2] *See* IHO Exhibit I.
[3] *See* Parent's Exhibit A-2.
[4] *See* Parent's Exhibit A-3.
[5] *See* Parent's Exhibit A-4.
[6] *See* IHO Exhibit I.
[7] *See* Parent's Exhibit A-6.
[8] *See* Parent's Exhibit T-3.

By way of relief, Parent seeks an award of tuition reimbursement for Student's attendance at Private School for the 2023-2024 school year. Parent additionally seeks reimbursement for 1:1 vision therapy 1x30 weekly, twelve hours of one-to-one special education itinerant teacher services ("SEIT") weekly for a ten-month school year, speech and language therapy ("SLT") 2x30, individual physical therapy ("PT") 2x30, individual occupational therapy ("OT") 3x30 and individual therapy 1x30 weekly. The Parent alleges that the equities support their claim for tuition reimbursement and direct tuition funding for the school year at issue, reimbursement for the vision therapy and payment for the various related services provided by a provider of the Parent's choosing at market rate.[9]

In light of the foregoing and as more fully discussed below, I find that 1) the DOE failed to meet its burden that it offered Student a FAPE for the 2023-2024 school year, 2) that the Parent failed to prove that the Private School offers Student specially designed instruction sufficient to meet Student's needs, 3) the Student is entitled to speech and language therapy 2x30, 4) the Student is entitled to individual physical therapy 1x30, 5) the Student is entitled to individual occupational therapy 3x30, and 6) the CSE is ordered the reconvene to consider a) the Student's need for Vision Therapy, b) if applicable, reimbursement to the Parent for Vision Therapy provided c) the Parent's request for an increase in PT, d) to determine if the Student is entitled to Special Education Itinerant Teacher Services ("SEIT") or Special Education Teacher Support Services ("SETSS") or neither and d) if applicable, whether Student is entitled to 12 SEIT hours.

**PROCEDURAL HISTORY**

I was appointed on September 21, 2023. On October 10, 2023, Parent's Counsel appeared for a Pre-Hearing Conference. The District did not appear on this date. The Parent's Counsel agreed to adjourn for a Status Conference in order to give the District an opportunity to make an appearance on this case. On October 12, 2023, only the Parent's Counsel appeared for a Status Conference. At the Status Conference, Parent's Counsel requested that the case be scheduled for a Merits Hearing. On November 2, 2023, only Parent's Counsel appeared for a virtual hearing.[10] The Parent submitted nineteen exhibits into the record. Included in Parent's evidence was four

---

[9] *See* DPH Transcript November 2, 2023 Tr. 98.
[10] *See* DPH Transcript November 2, 2023.

affidavit(s) from Parent, SEIT Provider, Neuropsychologist, Developmental Optometrist, which were accepted into the record in lieu of direct testimony.

## FINDINGS OF FACT AND DECISION

After a full review of the record generated, I make the following findings of fact and determinations.

A. Tuition Reimbursement

*Burden*

School districts have the burden of proof, including the burden of persuasion and burden of production, in IDEA due process hearings, except that a parent or person in parental relationship seeking tuition reimbursement for a unilateral parental placement has the burden of persuasion and burden of production on the appropriateness of such placement.[11]

*Prong I*

The IDEA provides that children with disabilities are entitled to a Free Appropriate Public Education ("FAPE").[12] A FAPE consists of specialized education and related services designed to meet a student's unique needs, provided in conformity with a comprehensive written Individualized Education Program ("IEP").[13] A school district has offered a student a FAPE when (a) the board of education complies with the procedural requirements set forth in the IDEA; and (b) the IEP is developed through the IDEA's procedures and is reasonably calculated to enable the student to receive educational benefits.[14] In order to meet its substantive FAPE obligations, a district must offer a student an IEP that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."[15]

As to Prong I of the *Burlington/Carter* standard, the DOE failed to meet its burden. The District failed to appear at the Pre-Hearing Conference, the Status Conference and Merits Hearing. As such, the District did not submit any evidence into the record. In short, the DOE declined

---

[11] NYS Educ. Law § 4404(1)(c).
[12] 20 U.S.C. § 1400 (d)(1)(A)
[13] 34 C.F.R. § 300.13
[14] *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206-07 (1982)
[15] *Endrew F. v. Douglas County Sch. Dist. RE-1*, 580 U.S. 386, 399. (2017)

to "offer a cogent and responsive explanation for their decisions" in creating the Student's IEP, and it is "through the IEP that "[t]he 'free appropriate public education' required by the Act is tailored to the unique needs of" a particular child".[16] Therefore, I find that the DOE failed to offer the Student FAPE for the 2023-2024 school year.

*Prong II*

A private school placement must be "proper under the Act."[17] This means that the private school must offer an educational program which met the student's special education needs.[18] Parents seeking reimbursement "bear the burden of demonstrating that their private placement was appropriate, even if the IEP was inappropriate."[19] "Subject to certain limited exceptions, 'the same considerations and criteria that apply in determining whether the [s]chool [d]istrict's placement is appropriate should be considered in determining the appropriateness of the parents' placement.'"[20]

Parents need not show that the placement provides every special service necessary to maximize the student's potential.[21] When determining whether a unilateral placement is appropriate, "[u]ltimately, the issue turns on" whether the placement is "reasonably calculated to enable the child to receive educational benefits."[22] A private placement is appropriate if it provides instruction specially designed to meet the unique needs of a student.[23]

The Second Circuit has set forth the standard for determining whether parents have carried their burden of demonstrating the appropriateness of their unilateral placement. No one factor is necessarily dispositive in determining whether parents' unilateral placement is reasonably calculated to enable the child to receive educational benefits. Grades, test scores, and regular advancement may constitute evidence that a child is receiving educational benefit, but courts assessing the propriety of a unilateral placement consider the totality of the circumstances in

---

[16] *Endrew F.*, 580 U.S. 386, 401.
[17] *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 12, 15 (1993); *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 370 (1985)
[18] *See Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112, 115 (2d Cir. 2007); *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998).
[19] *Gagliardo*, 489 F.3d at 112.
[20] *Gagliardo*, 489 F.3d at 112, quoting *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 364 (2d Cir. 2006).
[21] *Frank G.*, 459 F.3d at 364-65
[22] *Frank G.*, 459 F.3d at 364; see *Gagliardo*, 489 F.3d at 115.
[23] 20 U.S.C. § 1401(29); Educ. Law § 4401(1); 34 CFR 300.39(a)(1); 8 NYCRR 200.1(ww); *Hardison v. Bd. of Educ. of the Oneonta City Sch. Dist.*, 773 F.3d 372, 386 (2d Cir. 2014).

determining whether that placement reasonably serves a child's individual needs. To qualify for reimbursement under the IDEA, parents need not show that a private placement furnishes every special service necessary to maximize their child's potential. They need only demonstrate that the placement provides educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction.[24]

The Parent failed to provide any testimony from a representative of the Private School or provide any evidence[25] that demonstrated that the Private School is familiar with Student and Student's needs, created a specific plan to address this Student's specific needs, placed Student in a classroom that would address those needs and placed the Student in a classroom with students that were similarly situated. Additionally, the record lacked Private School issued progress reports, information as to the Private School being proper and meeting the Student's needs in light of the Parent requesting related services from an outside provider. Based on the record before me, I find that the record lacks sufficient evidence to determine that the Private School provides the Student with instruction specially designed to meet the Student's unique needs. As such, I find that Parent has not met their burden in proving that the private program offered an educational program which met Student's needs under Prong II of the *Burlington/Carter* standard.

The weight of the evidence does not establish that Student's individual special education needs were addressed by the Private School and that the instruction offered was "reasonably calculated to enable the child to receive educational benefits."[26]

### Equities

Even if a parent establishes a right to reimbursement under the IDEA, "courts retain discretion to reduce the amount of a reimbursement award if the equities so warrant."[27] In making that equitable determination, a hearing officer may consider many factors, including, inter alia, whether a parent's unilateral withdrawal of her child from the public school was justified, whether the parent provided the Department with adequate notice of the withdrawal, whether the amount

---

[24] *Gagliardo*, 489 F.3d at 112, quoting *Frank G.*, 459 F.3d at 364-65.
[25] The Parent submitted Student's schedule, Student's attendance record, the Private School's calendar, the contract that the Parent entered with the Private School and a tuition affidavit. See Exhibits G-K.
[26] *Frank G.*, 459 F.3d at 364.
[27] *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 246-47, 129 S. Ct. 2484, 174 L. Ed. 2d 168 (2009).

of private-school tuition was reasonable, whether the parent should have availed herself of need-based scholarships or other financial aid from the private school, and whether there was any fraud or collusion in generating (or inflating) the tuition to be charged to the Department, or whether the arrangement with the school was fraudulent or collusive in any other respect.[28]

The Parent's affidavit states that the Parent enrolled the Student in the Private School in March 2023 because as of that date the Student had not received an IEP or a new IEP meeting.[29] The Parent stated they wanted "to ensure [the Student] had a seat in a program where [the Student] was making progress in case [they] did not receive an IEP or placement offer for the upcoming school year."[30] In July 2023, Parent received the placement letter and took a tour of the school which they deemed inappropriate for the Student.[31] The class size could range from 25-28 students on average but be as large as 32 students. The Teacher to Student ratio was 1 Special Education and 1 General Education teacher for the entire class with up to 12 students having an IEP. The school did not have an on-site physical therapist- once a week a physical therapist visits the school to work with students that have a mandate for PT.[32]

The Parent's affidavit does not state that the Parent provided a Ten-Days' Notice to the District nor was a Ten-Days' Notice included as evidence. Based on such, one must presume the Parent did not provide the necessary Ten-Days' Notice of their concerns with the District's offer of FAPE for the Student for the 2023-2024 school year. One of the purposes of the statutory notice provision is to provide the school district with "an opportunity, before the child is removed, to assemble a team, evaluate the child, devise an appropriate plan, and determine whether a free appropriate public education can be provided in the public schools".[33]

By way of relief, the Parent seeks reimbursement for their private school tuition costs and to have the balance of unpaid tuition sent directly to the Private School. Direct tuition funding is relief encompassed by the equitable remedial powers inherent in IDEA.[34]

---

[28] *E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 461 (2d Cir. 2014).
[29] *See* Parent's Exhibit T-4.
[30] *See Id.*
[31] *See* Parent's Exhibit T- 3-4.
[32] *See* Parent's Exhibit T-4.
[33] *Greenland Sch. Dist. v. Amy N.*, 358 F.3d 150, 160 [1st Cir. 2004]; *see also R.B. and H.Z. ex rel. C.Z. v. New York City Dept. of Educ.*, 713 F. Supp. 2d 235, 248 [S.D.N.Y. 2010]
[34] *See e.g. Mr. and Mrs. A. v. New York City Dep't of Educ.*, 769 F. Supp. 2d 403, 406 (S.D.N.Y. 2011) (parents may seek direct funding in the instance in which, "due to a lack of financial resources, [parents of a student with a disability] have not made tuition payments but are legally obligated to do so.")

Based on the lack of evidence provided as to the unilateral placement of the Student, I am unable to rule as to the reasonableness of the costs, including tuition, associated with the Private School. After considering the record, I find that the equities do not support Parent's claim for tuition reimbursement and direct funding.

**RELATED SERVICES**

Under the IDEA, a FAPE is comprised of "special education and related services" that are available to an eligible child, meet state education standards, and are provided at no charge to the child's parent or guardian. 20 U.S.C. § 1401(9); 34 C.F.R. § 300.17; *see also Rowley*, 458 U.S. at 201, holding that "the basic floor of opportunity provided by the Act consists of access to specialized instruction and related services which are individually designed to provide educational benefit" (internal quotation marks omitted). Related services are "developmental, corrective, and other supportive services as are required to assist a child with a disability to benefit from special education" (34 C.F.R. § 300.34[a]; *see also* 8 NYCRR § 200.1[qq]).

To be entitled to a related service under the IDEA, (i) a child must have a disability requiring special education, (ii) the service must be necessary to aid the child to benefit from special education, and (iii) the service must be able to be performed by a non-physician. *Irving Indep. Sch. Dist. v. Tatro*, 468 U.S. 883, 894 (1984).

The Parent requested twelve hours of one-to-one special education itinerant teacher services ("SEIT") weekly for a ten-month school year which is an increase- the Student currently has four hours a week of SEIT. The Parent believes the Student needs more SEIT hours per day in order to improve in their areas of need and to enable [the Student] to "function adequately in the classroom and reach [their] goals."[35] The Parent requested speech and language therapy 2x30 per week, individual occupational therapy 3x30, individual therapy 1x30 weekly and individual physical therapy 2x30- which is an increase from the 1x30 Student is currently receiving. The Parent also requested reimbursement for 1:1 vision therapy 1x30 weekly.

The hearing record establishes that the Student was not provided a FAPE for the 2023-2024 school year. The District recommended a placement that was not appropriate for the Student in light of their needs. The placement was too large and it did not have the 1:1 adult support that

---

[35] *See* Parent's Exhibit T-9.

the Student needed to make progress.[36] The testimony of the Psychologist, Developmental Optometrist and the SEIT Provider, coupled with the testimony of the Parent and the uncontested documentary evidence support a finding that the Student was denied a FAPE and is entitled to some of the requested related services.

*Psychologist*

The Psychologist conducted a neuropsychological evaluation of the Student in May of 2023 and reviewed the following documents pertaining to the Student: 1) IEPs, 2) Evaluations, 3) Vision records 4) Progress reports from Gesher 5) EdZone progress reports pertaining to the provision of 1:1 SEIT, Occupational Therapy, Physical Therapy, Speech and Language Therapy and 5) Medical records.[37]

According to the testimony of the Psychologist, the Student meets the criteria for the following: a) Attention Deficit Hyperactivity Disorder, Inattentive Type b) Unspecified Communication Disorder and c) Developmental Coordination Disorder. Based on their observation and review of the above documents, the Psychologist found the Student needs the following related services in order to be successful: 1) 1:1 SEIT Instruction 3 hours per day; 2) 1:1 Vision Therapy 1x30; 3) 1:1 Occupational Therapy 3x30; 4) 1:1 Speech and Language Therapy 2x30; and 5) 1:1 Physical Therapy 2x30. The Psychologist stated "[w]ithout the individualized supports …[the Student's] deficits would not be appropriately addressed to afford progress during the school year.[38]

*Developmental Optometrist*

The Developmental Optometrist conducted a Visual Perceptual Evaluation of the Student in January 2023 and reviewed the following documents pertaining to the Student: 1) Various medical documents explaining the Student's Medical and Visual History 2) Evaluation Report from the Long Island Center for Child Development, 3) Pediatric Ophthalmologists Records, 4) Psycho-Educational Evaluation and 5) an IEP.

According to the testimony of the Developmental Optometrist, the Student was diagnosed with the following: a) Oculomotor Dysfunction, b) Fusional Instability/Eye Teaming Difficulties, c) Accommodative Infacility, d) Visual Motor Integration Deficits, e) Left/Right Awareness and f) Visual

---

[36] *See* Parent's Exhibit A 6-7;
[37] *See* Parent's Exhibit Q-2; *See* Parent's Exhibit Q-7
[38] *See* Parent's Exhibit Q-9

Spatial Awareness. Based on their observation and review, the witness stated the Student's "poor visual skills certainly hold [the Student] back when reading and writing. If [the Student's] two eyes do not work together as a team, [the Student] will not be able to integrate the two eyes together to get information to [their] brain."[39] "Vision therapy teaches [the Student] to use [their] two eyes together to gain information. Tracking will improve, as well as eye/hand coordination. Visual spatial improvements help [the Student] navigate the classroom. Directionality skill improvement helps the Student with reversals of letters and numbers."[40] The witness stated that there has been some progress noted from the Student's initial evaluation in January 2023 to their progress re-evaluation conducted in August 2023. However, the witness recommended that the Student continue with weekly vision therapy for the 2023-2024 school year.[41]

*SEIT Teacher*

The SEIT Teacher has worked with the Student since November 2020.[42] The SEIT Teacher reports there has been some improvements with the Student, but they still need more assistance. The Student continues to get easily distracted, needs to get a better handle on time management, needs improvement in transitions from one activity to the next, needs support with the visual tracking and fine motor skills.[43] The SEIT Teacher stated if "[the Student] does not have 1:1 SEIT support during the day, [the Student] is easily distracted, has difficulty staying on task and has difficulty transitioning and complying with various demands.[44]

The SEIT Teacher is allotted an hour of time to work with the Student. The afternoon was selected as the best time due to the Student being more tired and less able to focus in the afternoon.[45] The SEIT Teacher reported that based on their years of experience in working with the Student, the Student would benefit from an increase in services. The SEIT Teacher stated "I recommend [the Student] receive 3 hours of 1:1 SEIT throughout the school day to provide [them] with the required support and instruction [they] require for prompting, redirection and hand over

---

[39] *See* Parent's Exhibit R-4
[40] *See Id.*
[41] *See* Parent's Exhibit R 4-5
[42] *See* DPH Transcript November 2, 2023 Tr. 66
[43] *See* DPH Transcript November 2, 2023 Tr. 68-69
[44] *See* Parent's Exhibit S 5-6
[45] *See* DPH Transcript November 2, 2023 Tr. 67

hand individualized instruction. In total, [the Student] should receive 12 hours of 1:1 SEIT weekly."[46]

*Parent*

The Parent stated the Student receives the related services in the Private School and the vision therapy at the Developmental Optometrist's office. Parent stated they discuss the Student's progress, areas of challenge and what they can do at home to support the Student's growth and progress towards goals with the related service providers.[47] The Parent believes in the 2023-2024 school year there has been some progress observed in the Student due to the SEIT instruction.[48] The Parent stated that the combination of the SEIT services and the related services have helped the Student, but the Student needs a "greater amount of 1:1 SEIT instruction and support in class to address [the Student's] areas of need."[49] The Parent noted that the Student has made some improvement in scanning and processing the environment around them and improving in tasks that require hand eye coordination, however the Student continues to need the "supports to navigate appropriately and in a timely manner in the classroom, considering all of [the Student's] areas of challenge."[50]

### **RECONVENE OF CSE**

The Parent has requested a few services to be implemented that are in addition to the recommendation in the Student's IEP-additional SEIT hours, PT and Vision Therapy. The Parent has presented evidence via their witnesses as to the reasons they believe it is in the Student's best interest to receive the services in the frequency in which they desire. However, the hearing record is lacking in information as to what led the CSE to determine that the Student did not need these services or why they capped the services at the current frequency.

The Affidavit from the Developmental Optometrist states that their findings are based on their initial evaluation of the Student in January 2023 as well as recent reevaluation in August 2023.[51] Since the last IEP was issued in June 2023, there is reason to believe that the CSE did not

---

[46] *See* Parent's Exhibit S-6
[47] *See* Parent's Exhibit T-7
[48] *See Id.*
[49] *See* Parent's Exhibit T-9.
[50] *See* Parent's Exhibit T-8.
[51] *See* Parent's Exhibit R 4-5.

have access to this integral update as to the Student's vision needs when it made the June 2023 IEP. I believe that this information warrants the CSE reconvening to make a determination as to the Vision Therapy requested.

The Affidavit of the Neuropsychologist also exhibits that the Neuropsychologist has continued to monitor and evaluate the Student since the initial evaluation which would provide invaluable information to the CSE as to whether additional services and/or increase in services is merited.

The Affidavit of the SEIT states that the Student is making progress but more time per day is necessary to instill the progress that the Parent seeks. The SEIT Teacher stated if "[the Student] does not have 1:1 SEIT support during the day, [the Student] is easily distracted, has difficulty staying on task and has difficulty transitioning and complying with various demands."[52] I find this statement confounding in light of the fact that the SEIT selected the time the Student has gym and a portion of Math from 2-3pm or 2:15-3:15pm to be with the Student.[53] One would think that the SEIT would select a time that was more scholastic or where they could make more of an impact on the issues[54] they highlighted with the Student during their school day. Furthermore, from the evidence presented, the Student does not seem to have SEIT support *during* the day- the Student receives the support at the **end** of the school day since classes end at 3:15pm according to the Private School calendar.[55] The SEIT is only present during gym and a small portion of math class, this makes it difficult for this IHO to determine whether the SEIT services have made much of an impact on the Student's progress at all.

The Student's November 2021 CPSE IEP shows that the SEIT services were increased to one additional hour per week of SEIT from 3 to 4 per week.[56] According to the Parent's DPC, in May 2022, at the T5 meeting, the SEIT services were terminated due to the Student's age and the Student was provided five hours of SETSS with Counseling.[57] This year's IEP did not recommend any SETSS or SEIT services to the Student. Since the District was not present at the merits hearing or any proceeding and this IHO was unable to obtain the rational behind this decision, it is

---

[52] See Parent's Exhibit S 5-6
[53] See DPH Transcript November 2, 2023 Tr. 63-65; 69.
[54] See Parent's Exhibit S 5-6.
[55] See Parent's Exhibit G-1.
[56] See IHO Exhibit III-3
[57] See Parent's Exhibit A-4.

warranted that the matter of providing the Student SEIT or SETSS or neither needs to be reconsidered by the CSE with the updated information that can be provided by the Parent.

## CONCLUSION

The evidence provided supports the Student is entitled to the following Related Services: OT 3x30, PT 1x30, 2x30 SLT. The CSE needs to convene to determine if the Student is entitled to: SEIT or SETSS or no services, Vision Therapy, an additional session of PT, and if applicable twelve hours in SEIT services. Dependent on the CSE's determination as to Vision Therapy, the District will be ordered to reimburse the Parent and directly fund the services provided for the 2023-2024.

**ORDER**

NOW, THEREFORE, IN LIGHT OF THE ABOVE FINDINGS OF FACT, IT IS HEREBY **ORDERED THAT**:

(1) Parent's claim for tuition reimbursement for the Student's unilateral placement at Private School is **DENIED** for the 2023-2024 school year;

(2) Parent's claim for Speech and Language Therapy two session per week for thirty minutes is **GRANTED** for the 2023-2024 school year to be paid at reasonable market rate/fair market value as determined by the implementation unit through the provider/agency of the Parent's choice;

(3) Parent's claim for individual physical therapy one session per week for thirty minutes is **GRANTED** for the 2023-2024 school year to be paid at reasonable market rate/fair market value as determined by the implementation unit through the provider/agency of the Parent's choice;

(4) Parent's claim for individual occupational therapy three sessions per week for thirty minutes is **GRANTED** for the 2023-2024 school year to be paid at reasonable market rate/fair market value as determined by the implementation unit through the provider/agency of the Parent's choice; and

(5) The DOE is **ORDERED** to reconvene the CSE to consider the Student's need for:
   a. Vision Therapy;
      i. If Applicable, reimburse the Parent for Vision Therapy and directly fund provider within 35 days of receiving the doctor's invoice;
   b. An increase in Physical Therapy;
   c. Determine if the Student is entitled to SEIT or SETSS or neither service;
      i. If Applicable, an increase to twelve SEIT Hours.

**IT IS FURTHER ORDERED** that DOE shall directly pay the agency/provider(s) for the cost of the equitable services described above within 35 days of receipt of the agency/providers invoice with 1) a copy of the signed contract, 2) an accompanying affidavit attesting that the services billed were provided and 3) the provider's notes for days of service provided.

To the extent such services, as described in Paragraph (1) above, are not provided to the student by July 1, 2024, any remaining services shall expire.

Within 35 days of this order, the parent shall advise the DOE whether the parent elects for the DOE to provide any related services.

Dated: December 11, 2023


Impartial Hearing Officer

## NOTICE OF RIGHT TO APPEAL

Within 40 days of the date of this decision, the parent and/or the Public School District has a right to appeal the decision to a State Review Officer (SRO) of the New York State Education Department under section 4404 of the Education Law and the Individuals with Disabilities Education Act.

If either party plans to appeal the decision, a notice of intention to seek review shall be personally served upon the opposing party no later than 25 days after the date of the decision sought to be reviewed.

An appealing party's request for review shall be personally served upon the opposing party within 40 days from the date of the decision sought to be reviewed. An appealing party shall file the notice of intention to seek review, notice of request for review, request for review, and proof of service with the Office of State Review of the State Education Department within two days after service of the request for review is complete. The rules of procedure for appeals before an SRO are found in Part 279 of the Regulations of the Commissioner of Education. A copy of the rules in Part 279 and model forms are available at http://www.sro.nysed.gov.

## DISTRICT EVIDENCE

None

## PARENT EVIDENCE

| Exhibit | Title | Date | Pages |
|---|---|---|---|
| A | Due Process Complaint | 9/7/2023 | 15 |
| B | Visual Perception Evaluation | 1/10/2023 | 10 |
| C | Occupational Therapy Evaluation | 3/16/2023 | 20 |
| D | Speech and Language Evaluation | 3/28/2023 | 16 |
| E | Neuropsychological Evaluation | 5/31/2023 | 24 |
| G | Gesher Early Childhood Center Calendar | 2023-2024 | 1 |
| H | Gesher Early Childhood Center Attendance | 9/5/2023-10/24/2023 | 1 |
| I | Gesher Early Childhood Center 2023-2024 Schedule | Undated | 1 |
| J | Gesher Contract | 3/8/2023 | 2 |
| K | Gesher Tuition Affidavit | 10/31/2023 | 1 |
| L | Edzone Physical Therapy Progress Report | 9/27/2023 | 3 |
| M | Edzone Speech Progress Report | 10/10/2023 | 3 |
| N | Edzone Occupational Therapy Report | 3/16/2023 | 20 |
| O | Edzone SEIT Progress Report | 10/25/2023 | 5 |
| P | Resume of Dr. Karen Surowiec | Undated | 4 |
| Q | Affidavit of Dr. Karen Surowiec | 10/30/2023 | 9 |
| R | Affidavit of Dr. Marcie Stein | 10/31/2023 | 5 |
| S | Affidavit of Ahava Milner | 10/31/2023 | 6 |
| T | Affidavit of Parent-R█ S█ | 10/30/2023 | 9 |

## IHO EXHIBITS

| Exhibit | Title | Date | Pages |
|---|---|---|---|
| I. | IEP | 6/26/2023 | 23 |
| II. | Email Requesting IEP | 11/20/2023 | 5 |
| III. | CPSE IEP | 11/24/2021 | 18 |

Findings of Fact and Decision
Case No. 259045/612014

17

## APPENDIX

| Redacted Information | Term Used In FOFD |
|---|---|
| S■■■ S■ | Student |
| R■ S■ | Parent(s) |
| Ayodele Rashid | Parent Attorney/Representative |
| Gesher Early Childhood Center | Private School |
| Dr. Karen Surowiec | Neuropsychologist |
| Dr. Marcie Stein | Developmental Optometrist |
| Ahava Milner | SEIT |
| EdZone | Services Provider |